#### FOR THE

### COUNTY OF FRANKLIN.

#### JANUARY TERM, 1848.

PRESENT,

Hon. STEPHEN ROYCE, Chief Judge,
Hon. DANIEL KELLOGG,
Hon. HILAND HALL, } Assistant Judges.
Hon. CHARLES DAVIS,

---

### Amos Hagar *v.* James C. Stone.

In the action on book account the defendant may take advantage, before the auditor, of the non-joinder, as defendant, of one who was a co-contractor with him, and is not obliged to plead it in abatement before judgment to account.

Although a partnership may be open and notorious in the immediate neighborhood of the place of business of the firm, yet if its existence be not known to the plaintiff, and one member of the firm make the contract with the plaintiff in his own name, and credit be, upon reasonable grounds, given by the plaintiff to him alone, an action upon the contract may be sustained against him, without joining his copartners as defendants.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported, in substance, as follows.

About the first of September, 1840, the defendant and his son, Franklin H. Stone, entered into partnership in keeping an inn at

East Berkshire, under the firm of J. C. Stone & Son, and so continued until the time of the hearing before the auditor.    Previous to September 1, 1840, they had been in partnership in the business of making harnesses and saddles; and they continued in company in that business until 1845.    That partnership was of more general notoriety, than that of keeping the inn.    Many of the defendant's neighbors, and among them some of the merchants, kept their accounts with James C. Stone alone and charged articles for the inn to him.    Until the commencement of this suit the defendant usually settled these accounts, so charged to him, without any objection for the reason that they were charged to him alone; Franklin H. Stone was frequently present and assisted his father in these settlements. It appeared, however, that these persons, who had thus charged their accounts, were generally aware, that the defendant and his son were jointly interested in the business of the inn.    It also appeared, that J. C. Stone & Son had dealings with various merchants in St. Albans, some of whom charged their accounts (being principally for articles used in the harness business) to the firm; while other merchants in St. Albans charged their accounts to the defendant, (being articles for use in the inn.)    The merchants last named were not aware, that the defendant and his son were jointly interested in the inn; and the articles charged to the defendant in St. Albans were generally delivered to his son and were settled by the son, without disclosing that he and his father were in partnership.    In 1842 F. H. Stone took out the license for the inn in his own name; in 1843 J. C. Stone took it out in his own name; and in 1844, 1845 and 1846 it was taken out in the name of J. C. Stone & Son.    It farther appeared, that J. C. Stone & Son purchased articles for the inn in Troy, New York and Boston in the name of the firm, and forwarded the articles directed sometimes to J. C. Stone, and sometimes to Franklin H. Stone, but never to J. C. Stone & Son until after the commencement of this suit.    The wharfingers at St. Albans Bay charged the freight and charges to the person to whom the goods were directed, and collected the money without any objection, either from the defendant, or his son.    Franklin H. Stone usually made the purchases for the inn, and was the active partner in transacting the out door business relative to it; while the defendant usually took charge of the inn,—although Franklin H. Stone,

when at home, appeared to be as active as his father in attending to the inn. The defendant also occasionally purchased articles to be used at the inn. On the 25th day of May, 1843, the plaintiff delivered to Franklin H. Stone articles for the use of the inn, amounting to $6,13, and charged them to the defendant; and afterwards Franklin H. Stone paid for them, and the plaintiff delivered to him a bill of the goods, charged [to the defendant and receipted in full. In February, 1845, Franklin H. Stone requested one Ladd, a stage driver, to call on the plaintiff, at St. Albans, and get two kegs of oysters and bring them for the inn. Ladd called on the plaintiff and informed him that Mr. Stone, the tavern keeper at East Berkshire, wanted the plaintiff to send him two kegs of oysters; and the plaintiff thereupon delivered them to Ladd and Ladd delivered them to the defendant, at East Berkshire. The plaintiff supposed, at the time, that he was giving credit to the defendant and charged the oysters to him, and did not then know, that he had any partner in the business of the inn. It appeared, that the oysters were used in the inn, and for the benefit of the firm, and that the defendant supposed, that they were bought upon the partnership account;— and the plaintiff claimed to recover for them in this suit.

The auditor reported, that the partnership between the defendant and Franklin H. Stone was not a secret partnership, but was open and notorious, and that the plaintiff, by making reasonable inquiry at East Berkshire, could have known of its existence, and that, by making inquiry of the defendant, or of Franklin H. Stone, he could have been informed of their connection in business. And the auditor, upon these facts, decided, that the plaintiff should have brought his suit against the firm, and that he was not entitled to recover against the defendant alone.

The county court accepted the report of the auditor, and rendered judgment thereon for the plaintiff to recover of the defendant the amount of his account. Exceptions by defendant.

*Smalley* and *Beckwith* for defendant.

*Stevens* and *Edson* for plaintiff.

The opinion of the court was delivered by

Davis, J.  The only question, which arises in this case, is, whether, upon the facts disclosed in the auditor's report, showing a copartnership between the defendant and his son Franklin H. Stone, in respect to the dealings with the plaintiff which constitute the ground of his claim, the county court erred in rendering a judgment for the plaintiff.  The auditor reports the facts very fully, and comes to the conclusion, that F. H. Stone should have been joined in the suit.  The county court were of opinion, that the fact, that another was jointly liable with the defendant, interposed no obstacle to a recovery against the latter alone.

It seems, that the point now relied upon was first raised before the auditor ; judgment to account was given without objection, and the matter was referred to an auditor to take and report the account.  Ordinarily, in matters of contract, if a part, only, of those liable are sued, unless the objection appear upon the plaintiff's own statement of his case, the latter is entitled to judgment ; because each and every partner is liable for the whole debt.  So far as those dealing with the firm are concerned, it is not a matter of any consequence, who, among those responsible, discharge the claims, or from what fund they are paid,—whether from the joint property of the firm, or the separate property of some one of the members.  This is to be adjusted subsequently among themselves, prior to or on a dissolution.  It is, nevertheless, a formal irregularity to proceed against a part only, and, as such, may be insisted on by plea in abatement, at the earliest opportunity ; if not so done, the objection is waived.  In our action of book account, from its peculiar character, this mode of proceeding is impracticable.  The preliminary judgment to account is always rendered without reference to the actual dealings between the parties, or whether any have ever existed, or not.

As a necessary consequence of these principles, no inquiry can be had as to the number of parties liable, until the hearing before the auditor.  Phelps, J., in *Loomis* v. *Barrett*, 4 Vt. 450.  It is now well settled, that it may be made there and without formal pleadings.  The objection there has no longer the character of a plea in abatement, but assumes that of a substantial defence to the action.  This is doubtless a hardship upon the plaintiff; as much expense may

have been incurred in the preparation for trial upon the merits of the claim, all of which may be rendered nugatory, by having this formal objection suddenly sprung upon them, without notice, or preparation. Such, however, is the settled practice.

Although the report shows, that another person was jointly liable with the defendant on this account, yet that circumstance is not conclusive of the question. The articles, two kegs of oysters, were sent from St. Albans, where the plaintiff resides, to East Berkshire, where the defendant and his son kept a tavern, by Mr. Ladd, a stage driver, the plaintiff charging them to the defendant, supposing he alone sent for them, and ignorant that any other person had any interest in the tavern. They were delivered to the defendant, though Franklin H. Stone had requested the driver to get them; and they were used for the benefit of the firm. The partnership was open and notorious in the vicinity, under the style of J. C. Stone & Son.

It seems to be settled in England, by numerous decisions, that, in such cases, the question is, to whom in fact was the credit given, and with whom had the plaintiff reason to suppose he was dealing; if with the party sued alone, then the plaintiff cannot be defeated, by proving that other parties were also liable. *Baldney et al.* v. *Richie,* 1 Stark. R. 338. In that case the defendant gave an order, in his own name, for a quantity of copper for two vessels, owned by him and others; making no mention of his partners; and, in ordering the delivery of some old copper to the plaintiffs, he spoke of it as the copper of *his* ship, the *Harmony.* These ships were duly registered in the names of all the owners, and, on application and proper inquiry, their names could have been ascertained. A plea in abatement was filed, upon which an issue of fact was formed. Lord Ellenborough left it to the jury, to find with whom the contract was made,—observing that if the defendant meant that others should have been holden, he ought to have given some intimation to the plaintiff, that others were interested. A similar course was adopted in *Mullett* v. *Hook,* 1 Mood & Malk. 88; where the plaintiff had knowledge, that the defendant had partners. To the same effect is the case of *DeMantort* v. *Saunders,* 1 B. & Ad. 398; which, like that of *Baldney* v. *Richie,* was upon a plea in abatement, disclosing other parties, who ought to have been joined. Ld. Tenterden left it to the jury,.to say whether the plaintiff might

not reasonably suppose, from the circumstances, that the bill drawn by Saunders, Brothers & Co. was drawn by the defendants alone, notwithstanding the words *and Co.* might seem to indicate that there were others in the firm. The court of King's Bench held this ruling to be right. This undoubtedly overrules the case of *Dubois* v. *Ludert*, 1 Marshall 246, where it was held, that a secret partnership might be pleaded in abatement, though the plaintiff had no knowledge of it. See also the case of *Doe* v. *Chippenham*, cited in Abbot on Ship. 97 ; which supports the general doctrine. In *Stansfield* v. *Levy*, 3 Stark. 8, it was held, that a plea in abatement was not supported by evidence of a secret partnership, unknown to the plaintiff, the defendant having ordered the goods in his own name. The case of *Murray* v. *Somerville*, 2 Camp. 39, n., is to the same purport.

These cases are quite sufficient, to show, that, when all the partners are not known to the plaintiff, or when one of the members makes the contract in his own name, and credit is, upon reasonable grounds, given to one, he alone may be pursued ; and the fact, that others were associated with him, is not even sufficient to sustain a plea in abatement. A similar doctrine has been fully sanctioned by this court, in *Cleveland* v. *Woodward*, 15 Vt. 302. The action, as here, was on book, and the objection arose, upon the hearing before the auditor, to a part of the plaintiff's charges, which were for work on a farm owned by the defendant and another in company ; but the hiring was by the defendant, and the plaintiff was ignorant of the partnership.

It is a familiar principle, well established, that it is not necessary, though it is allowable, to proceed against a dormant partner,—even if known. If the parties can keep some members of the firm out of sight, though, as among themselves, enjoying all the advantages of an open partner, those dealing with them can do the same, holding those alone responsible, who assume to act for the whole. If the partnership be open and notorious, yet not actually known in a particular transaction,—especially if one of the members, by act, or word, give reason to suppose he alone is interested,—the case is a proper one for the application of a similar rule as in dormant partnerships.

Hagar v. Stone.

The report expressly finds, that credit was given alone to the defendant, who was confessedly a partner, and who generally had the charge and management of the tavern, while his son and partner had the control of the purchases and out door business. The facts, that other traders and business men in St. Albans sold articles for the use of the tavern and charged them to the defendant, which were paid for by him, without remark or objection,—that goods, purchased in Boston, Troy, &c., for their joint benefit, were often forwarded to the defendant alone, and the transportation charged and settled for as if his alone,—that, about two years before these oysters were delivered, while the same partnership existed, this plaintiff sold a small bill of goods for their joint use, which were charged to the defendant and paid for by his son, and a regular bill and receipt given, running to the defendant,—all furnish sufficient grounds, when connected with the plaintiff's ignorance of any partnership, for him to suppose he was dealing alone with the defendant. It is no satisfactory answer to this, to say, that by inquiry at Berkshire, or even of the stage driver, he might have ascertained the facts, as they existed.

The distinction, under which the defendant's counsel seek to obviate the general rule of law, is unsubstantial. It may be generally, but is far from being universally, true, that credit is given to the person who actually orders the goods. Other circumstances frequently determine that point. Mere order and delivery are no more conclusive of purchase, than actual custody is of ownership. The first bill of goods was called for and taken by Franklin, and paid for by him ; and yet credit was given to the father. In the present case, neither partner in person, or by written order, applied for the articles; and though Franklin requested the stage driver to get them, and he delivered them to the defendant, yet neither of these circumstances appears to have been know to the plaintiff, and if known, would rather have neutralized each other.

The judgment of the county court is affirmed.